

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**LAUREN-GREY IGEL**, on behalf of
herself and all others similarly situated,

    Plaintiff,

v.

**CAMPUS APARTMENTS, LLC,**

**CAMPUS APARTMENTS MANAGEMENT, LLC,**

and

**CAMPUS APARTMENTS, INC.,**

    Defendants.

Case No. 2:12cv642

_____/

## COMPLAINT

Plaintiff, Lauren-Grey Igel ("Igel"), on behalf of herself and all others similarly situated, brings this collective action against defendants Campus Apartments, LLC, Campus Apartments Management, LLC, and Campus Apartments, Inc. and alleges:

### Statement of Case

1. This is a collective action under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA") filed by Igel, on behalf of herself and all others similarly situated, to recover from Defendants unpaid wages and damages for improper wage deductions.

2. This collective action is brought pursuant to 29 U.S.C. § 216(b) and a demand is made herein for Court-Supervised Notice to all others similarly situated, money damages, interest, liquidated damages, attorney's fees, and costs.

## Jurisdiction and Venue

3. The claims asserted by Igel arose within the Eastern District of Virginia.

4. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. Pursuant to Local Civil Rule 3(c), venue is proper in this Division as Igel's claims arose in Norfolk, Virginia.

## Parties

6. At all times material, Igel has been an adult individual and a resident of the Commonwealth of Virginia.

7. Campus Apartments, LLC is a Pennsylvania limited liability company that is authorized to do business in the Commonwealth of Virginia.

8. Campus Apartments, LLC maintains a principal office at 4043 Walnut Street, Philadelphia, PA 19104.

9. At all times material, Campus Apartments, LLC was an enterprise engaged in interstate commerce, as defined by the FLSA.

10. Campus Apartments Management, LLC is a Delaware limited liability company that is authorized to do business in the Commonwealth of Virginia.

11. Campus Apartments Management, LLC maintains a principal office at 4043 Walnut Street, Philadelphia, PA 19104.

12. At all times material, Campus Apartments Management, LLC was an enterprise engaged in interstate commerce, as defined by the FLSA.

13. Campus Apartments, Inc. is a Pennsylvania corporation that is not currently authorized to do business in the Commonwealth of Virginia.

14. Campus Apartments, Inc. maintains a principal office at 4043 Walnut Street, Philadelphia, PA 19104.

15. At all times material, Campus Apartments, Inc. was an enterprise engaged in interstate commerce, as defined by the FLSA.

16. Upon information and belief, Campus Apartments, LLC, Campus Apartments Management, LLC, and Campus Apartments, Inc. conduct business under the name "Campus Apartments."

17. Upon information and belief, under 29 C.F.R. § 791.2, Campus Apartments, LLC, Campus Apartments Management, LLC, and Campus Apartments, Inc. were/are joint employers of Igel and all others similarly situated.

18. Campus Apartments, LLC, Campus Apartments Management, LLC, and Campus Apartments, Inc. are hereinafter collectively referred to as "Campus Apartments."

19. At all times material, Campus Apartments was an enterprise engaged in interstate commerce, as defined by the FLSA.

20. Alternatively, and without prejudice to other allegations herein, all allegations herein made against Campus Apartments jointly are also alleged severally against each Defendant.

## General Allegations

21. The District at ODU ("The District") is a two building apartment complex located at 1037 West 39th Street, Norfolk, VA 23508.

22. The District is owned by Norfolk Housing, LLC, which is a Florida limited liability company with a principal office of 1555 Palm Beach Lakes Blvd, Suite 1100, West Palm Beach, FL 33401.

3

23. The District primarily houses students of nearby Old Dominion University but is not affiliated with the university.

24. In or about August 2011, Campus Apartments was engaged to provide management services at The District.

25. Upon information and belief, Campus Apartments operates or provides management services for private student housing in approximately 24 states in the local market of approximately 70 colleges and universities.

26. Igel was an employee of the preceding management company for The District.

27. Igel was informed that she could apply for employment with Campus Apartments for a position referred to by Campus Apartments as a "Keystone."

28. Campus Apartments administers the terms and conditions of employment of the Keystones through a "Keystone Program."

29. Oversight of the Keystone Program is handled by Campus Apartments, by and through Heather R. Sizemore, National Director of Residence Life for Campus Apartments and CA-Keystone Program Director.

30. The Campus Apartments Keystone Program is designed to "provide social, educational and cultural experiences to all Campus Apartments residents using trained student team members who are the link between our residents and senior management team."

31. One of the "minimum requirements" to be a Keystone includes that the applicant be a "[r]esident of Campus Apartments during employment" (the "Residency Requirement").

32. The Residency Requirement means that the applicant is required to be or become a resident of the Campus Apartments community or complex at which the applicant seeks employment.

33. The Residency Requirement is for the primary benefit and convenience of Campus Apartments.

34. The duties and responsibilities of Keystones include, but are not limited to:

A. marketing the property and leasing units;

B. building and maintaining relationships with current and future residents;

C. being the "go-to people at Campus Apartments communities" by being assigned a group of residents and establishing a relationship with those and other residents so that the Keystone can assist residents with issues like roommate disputes, homesickness, depression, eating disorders, alcohol abuse, drug use, suicidal tendencies, conduct problems, theft, accidents, and assaults;

D. periodically working "on-call," during which time the Keystone is not permitted to leave the property and is required to be in uniform;

E. participation in Campus Apartments conference calls with other Keystones across the nation;

F. ensuring that the "property is a sociable, pleasurable, homelike environment"; and

G. working in the leasing office by performing tasks such as answering phones, logging package deliveries and distributing package notices, sorting and handling resident mail, assisting with copies and faxes, handling rent payments, and preparing move-in and move-out packages.

35. Keystones are required to work approximately 20 hours per week and are "expected to establish a presence in their communities, including weekends," and may be required to be available during national holidays and school break periods.

36. Because Keystones are the "go-to people at Campus Apartments communities," their job duties arise at all hours of the day or night, as well as on weekends and holidays.

37. The Residency Requirement is integral to the role and duties of the Keystones.

38. Campus Apartments describes the compensation to Keystones as follows:

> In monetary terms you will receive free rent and a monthly stipend for completion of your standard 20-hour per [sic] requirement. For any additional hours worked you will receive the state minimum hourly rate as appropriate to your location. In addition, if you are involved in the leasing of our properties you will receive the appropriate leasing bonus of any leases attributable to you in accordance with Campus Apartments' leasing bonus policy.

39. Igel applied to be a Keystone and her application was accepted with an effective date of hire with Campus Apartments of August 1, 2011.

40. During her employment with Campus Apartments, Igel was required, suffered, or permitted to work hours not reflected or not accurately reflected in Campus Apartments' records.

41. Igel was not paid minimum wage for all hours she was required, suffered, or permitted to work during her employment with Campus Apartments.

42. Campus Apartments' failure to pay Igel at least the minimum wage for all hours worked was not in good faith and Campus Apartments had no reasonable grounds for believing that the act or omission was not a violation of the FLSA.

43. Campus Apartments' failure to accurately record Igel's hours worked was not in good faith and Campus Apartments had no reasonable grounds for believing that the act or omission was not a violation of the FLSA's recordkeeping regulations found in 29 C.F.R. § 516.2(a).

44. Campus Apartments repeatedly deducted expenses related to the Residency Requirement from and/or took a credit for "free rent" against Igel's pay such that her wages fell below the minimum wage required for the workweek.

45. Campus Apartments' repeated deduction of expenses related to the Residency Requirement from and/or taking a credit for "free rent" against Igel's pay such that her wages fell below the minimum wage required for the workweek was not in good faith and Campus Apartments had no reasonable grounds for believing that the act or omission was not a violation of the FLSA.

46. Campus Apartments' violations of the FLSA and its regulations were willful and deliberate.

47. Igel's performance of her Keystone job duties simultaneously benefited each of Campus Apartments, LLC, Campus Apartments Management, LLC, and Campus Apartments, Inc.

48. Igel engaged in commerce, as defined by the FLSA, each workweek she performed her Keystone job duties.

49. Igel performed her Keystone job duties until her employment was terminated on March 27, 2012.

50. There are numerous other similarly situated employees and former employees of Campus Apartments that were subject to the same terms and conditions of employment as Igel and would benefit from Court-Supervised Notice of the present action and the opportunity to join. These similarly situated persons are known to Campus Apartments and are readily identifiable and locatable through Campus Apartments' records.

## <u>Violations of the FLSA by Campus Apartments, Jointly and Severally:</u>
### <u>Failure to Pay Minimum Wage</u>

51. All foregoing paragraphs are incorporated as if alleged herein.

52. At all times material, Igel and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA.

53. Campus Apartments violated the FLSA by not maintaining accurate records of all hours required, suffered, or permitted to work by Igel and all others similarly situated.

54. Accordingly, Igel and all others similarly situated are entitled to provide estimates of the actual hours worked.

55. The Residency Requirement was for the primary convenience and benefit of Campus Apartments.

56. As such, Campus Apartments is not permitted to take a credit towards wages for the provision of lodging or "free rent" to its Keystone employees nor is Campus Apartments permitted to deduct the cost of lodging or "free rent" from the wages of its Keystone employees.

57. Campus Apartments violated the FLSA in each workweek it deducted costs related to the Residency Requirement from and/or took a credit for "free rent" against the wages due to Igel and all others similarly situated, causing the wages paid to Igel and all others similarly situated to fall below minimum wage.

58. Campus Apartments violated the FLSA in each workweek it deducted costs related to the Residency Requirement from and/or took a credit for "free rent" against the wages due to Igel and all others similarly situated, causing no wages to be paid to Igel and all others similarly situated.

59. Campus Apartments violated the FLSA by failing to pay the minimum wage to Igel and all others similarly situated for all hours required, suffered, or permitted to work.

60. Igel and all others similarly situated have been damaged by improper wage deductions for costs related to the Residency Requirement and/or the taking of credits for "free rent," as well as by the nonpayment of minimum wages for all hours worked, and are each entitled to the recovery of same.

61. Campus Apartments' failure to pay the minimum wage to Igel and all others similarly situated was willful and deliberate.

62. Because this action arises out of a willful violation of the FLSA, the statute of limitations for Igel and all others similarly situated is three years, per 29 U.S.C. § 255(a).

63. Because Campus Apartments' violations of the FLSA rights of Igel and all others similarly situated were not in good faith and Campus Apartments had no reasonable grounds for believing that the act or omission was not a violation of the FLSA, Igel and all others similarly situated are each entitled to liquidated damages in an amount equal to the unpaid wages due to each.

64. Alternatively, if liquidated damages are not awarded, Igel and all others similarly situated are each entitled to the recovery of interest, at the prevailing rate, on all unpaid minimum wages.

65. Igel and all others similarly situated are also entitled to reasonable attorney's fees and the costs of this action.

## Trial By Jury

66. Igel requests trial by jury on all issues so triable.

WHEREFORE, the Plaintiff, Lauren-Grey Igel respectfully requests that this Honorable Court enter appropriate orders:

A. that Igel is allowed to give Notice, or that the Court will issue Notice, to all Keystones employed by Campus Apartments in all locations in the United States during the three years immediately preceding the filing of this action informing them of the filing this action, the nature of the action, and of their right to opt-in to this action if they were not paid minimum wage for all hours worked and/or experienced wage deductions for costs related to the Residency Requirement and/or had credits for "free rent" taken against wages owed that, in a workweek, caused no wages to be paid or caused the wages paid to fall below minimum wage;

B. that Igel and all others similarly situated are entitled to estimate the hours worked for Campus Apartments;

C. awarding Igel and all others similarly situated minimum wage for all hours worked, or in the alternative, an amount equal to the wage deductions for costs related to the Residency Requirement and/or credits for "free rent" taken against wages for each workweek the deductions and/or credits caused no wages to be paid or caused the wages paid to fall below minimum wage;

D. awarding Igel and all others similarly situated liquidated damages in an amount equal to the principal amount of sums awarded;

E. alternatively, if liquidated damages are not awarded, awarding Igel and all others similarly situated pre-judgment interest on all sums awarded;

F.  awarding Igel and all others similarly situated post-judgment interest on all sums awarded;

G.  awarding Igel and all others similarly situated reasonable attorney's fees and the costs of this action; and

H.  granting such other relief as this Honorable Court deems appropriate.


**LAUREN-GREY IGEL**

By _____

Joshua M. David (VSB No. 41386)
jdavid@davidkampfrank.com
Nicholas A. Nunes (VSB No. 77947)
nanunes@davidkampfrank.com
DAVID, KAMP & FRANK, L.L.C.
739 Thimble Shoals Blvd., Suite 105
Newport News, VA  23606
(757) 595-4500 (Phone)
(757) 595-6723 (Facsimile)

Attorneys for Lauren-Grey Igel